Filed 10/24/24  P. v. Reyes CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> BOBBIE BARRAGAN REYES, <br><br>     Defendant and Appellant. | D082518 <br><br><br> (Super. Ct. No. SCD286262) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Bobbie Barragan Reyes of first degree murder (Pen. Code,[1] § 187, subd. (a); count 1) and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 2). As to count 1, the jury found true that Reyes personally and intentionally discharged a firearm and proximately caused great bodily injury and death to a person other than an accomplice (§ 12022.53, subd. (d)). During a bifurcated proceeding, Reyes stipulated to four aggravating factors, and the court found true three additional aggravating factors. The court sentenced Reyes to a determinate term of 12 years plus 25 years to life.

On appeal, Reyes contends the prosecutor misled the jury during closing argument as to what it means to act deliberately and with premeditation. Alternatively, should we conclude Reyes forfeited this argument, he argues he received ineffective assistance of counsel. We disagree and, therefore, affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *Prosecution Evidence*

Surveillance videos showed Reyes arriving at the Euclid trolley station in a silver SUV at around 6:20 p.m. on May 19, 2020, with his brother and his brother's girlfriend and then exiting the vehicle. A few minutes later, video footage showed the victim, V.C., walking from a grocery store parking lot to the trolley station. Reyes and V.C. met up and then walked through a parking lot and onto a dirt trail.

V.C.'s mother testified that her son used crystal methamphetamine. She also said she knew he carried a black canvas wallet and that he had

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

[2]     We provide only a brief recitation of the facts as they are not pivotal to deciding the issue presented by Reyes.

withdrawn about $800 from her bank account the day before he died. V.C. had a cell phone, and his mother said she saw him with it when she dropped him off at her house at noon on the day he was killed.

After Reyes and V.C. walked onto the trail, multiple witnesses heard gunshots. A passerby alerted security guards at a nearby building that there was a body on the trail. The security guards investigated and called 911 after finding V.C. with "fixed and dilated" eyes, "no visible respiration," and "quite a bit of blood pooled underneath the T-shirt he was wearing." A responding officer arrived at about 7:30 p.m. V.C. had no wallet or cell phone but had an unopened beer can in his front pants pocket.

Three days later, Reyes's brother and his girlfriend were stopped in the silver SUV in response to a "be-on-the-lookout flyer" showing their vehicle.

An autopsy photograph reflected that V.C. had one bullet wound in his lower abdomen, one in his upper right chest, and one in his upper right shoulder in addition to a graze wound on his thumb. No drugs were detected in his blood.

An officer identified messages from the day in question between Reyes and a man named Saul Saulito in which Reyes agreed to do "a job." Reyes's ex-girlfriend testified that Reyes was using drugs in May 2020.

B. *Defense Evidence*

Reyes testified in his own defense. He said he was 24 years old in May 2020, a methamphetamine user, and a drug dealer. He explained that he carried a gun for his own protection. According to Reyes, the "job" Saulito asked him to do was pick up immigrants in the mountains.

Reyes explained that he normally walked to a secluded area to sell drugs so that he would not be seen on camera and that he did the same with V.C. At a certain point, V.C. stopped and reached into his left pocket.

Reyes was afraid V.C. was going to pull a gun on him because he had seen a bulge in V.C.'s pocket.[3] Reyes shot V.C. three times and ran. His brother picked him up at the other end of the trail. He disposed of the gun at some point, but he did not recall where he threw it.

Reyes acknowledged that he never saw a weapon on V.C. He said he did not know what happened to V.C.'s wallet or cell phone.

## DISCUSSION

Reyes's primary argument on appeal is that the prosecutor engaged in misconduct during closing arguments by equating the split-second decision to run a yellow traffic light with the amount of deliberation and premeditation necessary to find him guilty of first degree murder.

A. *Additional Facts*

The prosecution presented two theories of murder. First, the prosecutor discussed malice murder and argued the evidence showed Reyes acted with deliberation and premeditation. Second, he offered a felony murder theory based on the premise that Reyes robbed V.C. before killing him.

The court instructed on both theories. Regarding the first, it told the jury:

> "The defendant is guilty of first degree murder if the defendant—if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the acts that caused the death.

---

[3] The defense pointed out during closing argument that there was indeed a bulge in V.C.'s pocket caused by the beer can.

4

"The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, compulsively and/or without willful deliberation is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time."

After fully instructing the jury, the court allowed closing arguments by counsel.

In explaining what was required to elevate a malice murder from second to first degree murder, the prosecutor explained that he had to prove Reyes acted willfully, deliberately, and with premeditation. After clarifying that willfulness meant having an intent to kill, the prosecutor described deliberation and premeditation as follows:

"Deliberate, carefully weighing the considerations for and against his choice and, knowing the consequences, decided to kill.

"Premeditation, if he decided to kill before completing the act that caused the death, right? So it's insufficient if he decides to kill after he fires the gun. That decision to kill has to be reached before he fired the gun.

"First degree murder, the length of time a person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. A cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time. Now I want to give you an example.

"So probably most of you drive—most of you probably drove here this morning. In this scenario, you're coming upon a stoplight, and it turns yellow. And it's one of those yellow lights that's right on the edge, right? You could go or you could stop. In that split second, you have to make a decision. Do I nail it and go through this yellow light or do I slam on the brakes and stop? In

5

that split second when you're making that decision, there's a lot of different things that are going through your mind. You're thinking, If I go through this light, am I going to kill somebody? Is a pedestrian going to step out in front of me? Is a car going to turn in front of me? There's a guy that's been tailgating me for the last three blocks. If I hit the brakes and stop, is he going to rear-end me? There's a cop at this intersection. If I go through, am I going to get a ticket? I'm cutting it close to get to work or to get to court. If I stop, am I going to be late?

"There's a lot of different considerations in your mind when you're deciding whether to stop or to go at that yellow light. But you make that decision. You take in all the information, and you make a decision. That decision of whether to stop or to go is deliberate and premeditated. It's about the extent of the reflection, not the length of time."

Defense counsel did not object to this argument.

The prosecutor then went on to state that "The premeditation started that morning when he put the gun on." At that point, defense counsel objected that the prosecutor had misstated the law, but the court overruled the objection.

In its closing argument, the defense did not specifically respond to the yellow light analogy. Instead, it focused on its theory that Reyes acted in self-defense.

B. *Analysis*

The People assert that Reyes forfeited his claim by failing to object on prosecutorial misconduct grounds below. We agree.

" ' "[A] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]" ' " (*People v. Pearson* (2013) 56 Cal.4th 393, 426.) There is no question Reyes's counsel did not

6

object on misconduct grounds below or seek an admonition, and Reyes concedes as much. As a result, the contention is forfeited.

Nonetheless, even if Reyes had preserved his claim, we conclude this portion of the prosecutor's argument did not constitute misconduct. For prosecutorial misconduct to rise to the level of a federal constitutional violation, the prosecutor's comments must " 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.' " (*Darden v. Wainwright* (1986) 477 U.S. 168, 181; *People v. Martinez* (2010) 47 Cal.4th 911, 955.) If the prosecutor's statements or actions do not render a criminal trial fundamentally unfair but do " 'involve[ ] the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury[,]' " it is prosecutorial misconduct under state law. (*People v. Valdez* (2004) 32 Cal.4th 73, 122.) However, a prosecutor need not "act with a culpable state of mind." (*People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1 (*Hill*).)

Because a showing of bad faith is not required, "A more apt description of the transgression is prosecutorial error." (*Hill*, *supra*, 17 Cal.4th at p. 823, fn. 1.) To constitute error, it is not enough that the prosecutor's remarks could be construed as improper. (*People v. Potts* (2019) 6 Cal.5th 1012, 1036 (*Potts*).) Rather, the appellant must " 'establish a reasonable likelihood the jury construed the remarks in an objectionable fashion.' " (*Ibid.*)

In this case, the jury had already heard the court's instruction pursuant to CALCRIM No. 521 that "The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill." The prosecutor then reiterated this instruction virtually verbatim. Thus, the jury already had this careful weighing concept firmly in mind before the prosecutor offered the challenged

7

analogy. It had also heard the prosecutor restate the instruction that Reyes's act was premeditated if he decided to kill before completing the act that caused death.

Had the prosecutor then trivialized the process by making clear he directly equated the required deliberation and premeditation with an insignificant decisionmaking process, we might be inclined to agree with Reyes. However, we read the yellow light example as appropriately illustrating the weighing process and the depth of reflection required. The prosecutor described six different considerations a driver might make in the process of deciding whether to go or stop as well as the consequences of each. Several involved weighty issues including the risk of killing someone or getting hit. He then made clear that the driver must take in all the information before making a decision. He concluded by accurately reiterating language from the jury instruction that the consideration was the extent of the reflection, not the length of time. In other words, he presented the decision of whether to go through a yellow light as one requiring the same kind of significant thought and weighing of substantial consequences that the decision regarding a first degree murder charge should involve. On this record, it is not reasonably likely the jury construed the prosecutor's yellow light reference in an objectionable manner.

Reyes responds that the prosecutor's list of concerns does not realistically reflect what actually goes through a driver's mind in this situation. In practice, drivers abide by their duty to slow down and stop when a light turns yellow unless it is unsafe to do so. Thus, Reyes argues most drivers simply follow the rules of the road like a reasonably prudent person would and that, as a result, their actions are much more "reflexive, automatic, and instinctual" than the prosecutor's analogy suggests.

That may be, but in the context in which the analogy was presented, the prosecutor did not simply tell the jurors to reflect on their *own* common sense understanding of how to make the decision of whether to stop or go at a yellow light, whatever that might be. Instead, he illustrated in detail a thought process that considered many potentially life-changing consequences to the decision. Thus, as presented, the analogy *did* exemplify a careful weighing process that factored in the consequences of the decision to be made. Accordingly, we do not view the yellow light example, as specifically described in this case, as diluting the court's instruction that "The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill."

For the same reason, we are not persuaded by Reyes's reliance on *People v. Avila* (2009) 46 Cal.4th 680. In *Avila*, the court disagreed with the defendant's characterization of the prosecutor's argument as being that " 'the "cold, calculated" judgment of murder is the equivalent of deciding whether to stop at a yellow light or proceed through the intersection.' " (*Id.* at p. 715.) Instead, the court concluded "the prosecutor used the example of assessing one's distance from a traffic light, and the location of surrounding vehicles, when it appears the light will soon turn yellow and then red, and then determining based on this information whether to proceed through the intersection when the light does turn yellow, as an example of a 'quick judgment' that is nonetheless 'cold' and 'calculated.' " (*Ibid.*) The court further noted that the prosecutor also said, " 'Deciding to and moving forward with the decision to kill is similar, but I'm not going to say in any way it's the same. There's great dire consequences that have a difference here.' " (*Ibid.*) In Reyes's view, the fact that the prosecutor in his case did not make a

9

similar statement making clear that the decision to kill is not the same as the decision to run a yellow light is a critical distinction.

Division Three of this district addressed a comparable argument in *People v. Son* (2020) 56 Cal.App.5th 689, 699. We agree with them that the *Avila* court did not intend to establish any sort of bright line rule in noting this final comment by the prosecutor. Rather, as we have done here, the *Avila* court focused on the fact that the prosecutor's example demonstrated that a judgment made quickly can still involve first assessing relevant factors in a calculated manner. Furthermore, the prosecutor in this case offered a much longer list of factors to weigh that the prosecution in *Avila*, and he described dire potential consequences including killing someone.

In general, we presume that jurors follow the court's instructions (*Potts*, *supra*, 6 Cal.5th at p. 1037), and "that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." (*People v. Clair* (1992) 2 Cal.4th 629, 663, fn. 8.) We see no reason to deviate from these presumptions here, particularly given that the court specifically instructed the jury that "If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." Furthermore, because each of the jurors had copies of the instructions to use during deliberations, the instructions provided the last word on the appropriate standard to be applied. Those instructions also countered any inference that a hasty, reflexive decision would suffice by explaining that, "A decision to kill made rashly, compulsively and/or without willful deliberation is not deliberate and premeditated." Thus, Reyes's arguments do

10

not persuade us there is a reasonable likelihood the jury construed the remarks in an objectionable fashion.  (*Potts*, *supra*, 6 Cal.5th at p. 1036.)[4]

DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


CASTILLO, J.

---

[4]    Anticipating the People's forfeiture arguments, Reyes argued alternately that we should find his attorney provided constitutionally inadequate assistance of counsel.  Because we addressed his primary claim on the merits, we need not address his ineffective assistance of counsel arguments.